Filed 9/26/22  Marriage of Huang and Pabianova CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re the Marriage of FANG HUANG and MARIE PABIANOVA. _____ FANG HUANG,     Appellant,      v. MARIE PABIANOVA,     Respondent. | B316284 (Los Angeles County Super. Ct. No. BD615033) |

APPEAL from an order of the Superior Court of Los Angeles County, Angela J. Davis, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Affirmed.

Law Office of Noelle M. Halaby, Noelle M. Halaby and Maria D. Houser for Appellant.

No appearance for Respondent.

_____

Following the dissolution of his marriage to Maria Pabianova (Mother), Fang Huang (Father) appeals from an order modifying his child support obligation. Father argues that by imputing to him $6,515 in monthly income, the family court failed to properly place the burden on Mother to show he had the ability and opportunity to earn the imputed amount. We conclude the court did not abuse its discretion and affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

### 1. Original Child Support Order

Mother and Father were married in 2010. They have two minor children. During the marriage, the couple supported their family with earned income. In October 2014, the couple separated.

In February 2015, Father petitioned for dissolution of marriage. A marital settlement agreement provided for equal custody and equal time share of the children, and Father's monthly child support obligation of $886. Father's $886 payment was a statutory guideline amount (DissoMaster[1]) based on Father's monthly income of $14,219 and Mother's monthly income of $7,083. On January 26, 2018, the family court entered a stipulated judgment of dissolution. The judgment required

---

[1] The DissoMaster is a privately created computer program used to calculate child support pursuant to the algebraic formula set forth in Family Code section 4055 as the guideline amounts. (*In re Marriage of Schulze* (1997) 60 Cal.App.4th 519, 523, fn. 2.) It appears from the record that the family court consistently calculated Father's child support obligations in accordance with the statute's mandatory formula, and Father does not contend otherwise.

Father to pay $886 in monthly child support as stated in the agreement.

## 2. Father's First Modification Request

In April 2019, Father requested to modify his monthly child support obligation to "zero."[2] In support of his request, Father asserted he had lost his job and had no other source of income. Father further asserted he intended to apply for unemployment compensation and to search for a new job.

Mother filed a response, objecting to the requested modification.

The family court heard the matter on May 24, 2019. The court imputed $81,000 of severance pay to Father, which the court annualized to $6,750 of monthly income for 12 months. Based on the statutory guideline, the court reduced Father's monthly child support obligation to $1,020.[3] The court ordered Father to "make good faith" employment search efforts and to provide documentation of his efforts to Mother on a biweekly basis. (See Fam. Code, § 4505.) The modification order was not appealed.

## 3. Father's Renewed Modification Request

On July 27, 2020, Father again requested to reduce his monthly child support obligation to zero. In support of his request, Father asserted it had been more than a year since the

---

[2] After Mother lost her job, the parties stipulated on November 8, 2018, to an increase of Father's monthly child support payment from $886 to $1,896.

[3] Judge Anne Richardson presided over the May 24, 2019 hearing. While the record is not entirely clear, it appears her ruling was made on that date, although it was not filed until August 20, 2019.

last modification order annualizing his $81,000 in severance pay and his income had severely diminished. Father stated he had been "diligently" job searching but was still unemployed and had no immediate employment prospects. His sole income was unemployment insurance. Father stated he had undergone reconstructive shoulder surgery on August 27, 2019, "which rendered [him] unable to work until [he] could fully recover." According to Father, Mother canceled his health insurance in October 2019, which delayed his recovery because he could not pay for physical therapy sessions. As a result, Father was not cleared to work until February 2020.

In her opposition, Mother argued Father did not meet his burden to show changed circumstances, including a lack of ability and opportunity to earn the same income since the last modification order. Mother contended Father had made few attempts to gain new employment, he had paid for physical therapy out-of-pocket when necessary, and he had taken multiple lengthy ski trips when he was supposedly on disability. Mother also requested guideline support based on her current monthly income of $2,495 and Father's income exceeding $400,000 in 2019, his current liquid assets exceeding $300,000 and his reduced time share of the children. Mother included subpoenaed employment and financial records to substantiate her claims.

### 4. Evidentiary Hearing

The family court conducted a two-day hearing on the matter.[4] Mother and Father were the sole witnesses. Mother was represented by counsel; Father was self-represented.

---

[4] Commissioner Angela J. Davis presided over the two-day hearing and entered the final order at issue in this appeal.

Counsel for the Los Angeles County Child Support Services Department (CSSD) also appeared. CSSD had become involved when Father stopped paying child support in January 2020.

At the conclusion of the hearing's second day, the family court stated its tentative would be to adopt a statutory guideline close to a calculation of Father's monthly living expenses. The court added the modification would reflect the six months of Father's 5 percent time share of the children. The court ordered the CSSD attorney to prepare separate child support guideline computations, using proposed incomes provided by the parties. The court also ordered the parties to submit written closing arguments.

**5.      Family Court's Ruling**

In its July 27, 2021 ruling, the family court determined that relying on evidence of Father's earning capacity was in the children's best interest. The court gave reasons it was compelled by the evidence to reject Father's claims he was unable or without the opportunity to work at his prior income level. The court concluded Father "could qualify for any number of well-paid positions across manifold industries," as demonstrated by his intellect and abilities, experience, and earnings history. Rather than reducing his support to zero, the court imputed to Father a monthly income of $6,515. The court explained this figure approximated Father's before-tax earnings and corresponded to average monthly credit card expenditure of $5,459.

Neither party objected to the ruling. The family court directed the CSSD to give notice of the July 27, 2021 ruling to the parties. Father represents he did not receive notice of the ruling until October 2021. He filed a timely notice of appeal. (Cal. Rules of Court, rule 8.104(a)(1)(C).)

5

## DISCUSSION

Father contends the family court's imputation of income to him was prejudicial error. He does not challenge the $6,515 valuation by arguing it was miscalculated or erroneously based on his living expenses. Instead, Father maintains the income imputation was "without the appropriate legal basis." According to Father, (1) the court improperly placed the burden on him rather than on Mother to prove Father's ability and opportunity to work; and (2) Mother failed to meet the burden of proof that should have been allocated to her. As we discuss, this argument reflects a fundamental misunderstanding of the allocation of the burden of proof in this case.

### A. Applicable Law

#### 1. Standard of review

A party seeking to modify child support bears the burden of showing a material change in circumstances sufficient to justify the requested modification. The trial court must determine whether that modification is justified based on the specific facts before it; a reviewing court will not disturb the trial court's determination unless abuse of discretion is shown as a matter of law. (*In re Marriage of McHugh* (2014) 231 Cal.App.4th 1238, 1247.) Thus, " '[t]he ultimate determination of whether the individual facts of the case warrant modification of support is within the discretion of the trial court.' " (*In re Marriage of Williams* (2007) 150 Cal.App.4th 1221, 1234.)

"A family law court abuses its discretion if it applies improper criteria or makes incorrect legal assumptions." (*Ellis v. Lyons* (2016) 2 Cal.App.5th 404, 415; see *Farmers Ins. Exchange v. Superior Court* (2013) 218 Cal.App.4th 96, 106 ["[i]f the court's decision is influenced by an erroneous understanding of

6

applicable law or reflects an unawareness of the full scope of its discretion, the court has not properly exercised its discretion under the law"].)

Where, as here, the appellant fails to bring to the family court's attention any ambiguities or omissions in its factual findings, we must presume the court made all factual findings necessary to support its order. (*Fladeboe v. American Isuzu Motors, Inc.* (2007) 150 Cal.App.4th 42, 48.)

## B. The Family Court Properly Allocated the Burden of Proof

To determine a parent's income in calculating guideline child support, a family court "may, in its discretion, impute to that parent an income different from his or her actual income— i.e., an income amount that corresponds with that parent's earning capacity." (*In re Marriage of Sorge* (2012) 202 Cal.App.4th 626, 642.) "Earning capacity" means the income that the parent " ' "is reasonably capable of earning" ' " according to the parent's " ' "age, health, education, marketable skills, employment history, and the availability of employment opportunities." ' " (*In re Marriage of Lim & Carrasco* (2013) 214 Cal.App.4th 768, 775.) "[I]ncome cannot be imputed based upon a party's earning 'capacity' absent proof of *both* ability and opportunity to earn the income on a going-forward basis." (*In re Marriage of Berger* (2009) 170 Cal.App.4th 1070,1079.)

Father contends because Mother also sought imputation of income to Father when she opposed his renewed modification request, it was Mother's burden to prove Father had the ability and the opportunity to earn. Father is just plain wrong.

"On an application to modify support by imputing income to a parent based on earning capacity, the burden of proof as to

7

ability and opportunity to earn imputed income changes depending on which parent—the payor or the payee—is seeking to change the status quo. For example, 'where the payor parent loses his or her job and seeks a reduction in court-ordered support based on the changed circumstances of lack of income, it will be the payor parent, as moving party, who bears the burden of showing a *lack* of ability and opportunity to earn income.' [Citations.] In contrast, when the payee parent seeks to increase the amount of court-ordered support by imputing to the payor parent a greater income than the court previously found, the payee parent, as the moving party, bears the burden of proof to show the payor parent *has* the ability and opportunity to earn that imputed income." (*In re Marriage of McHugh*, *supra*, 231 Cal.App.4th at pp. 1246–1247.)

The family court did not misallocate the burden of proof. Here, it was Father, not Mother, who first moved for a change in the existing child support order. As the payor spouse seeking to reduce payments because of a life change, he had the burden to prove he either lacked the ability to find employment or had no reasonable opportunities to obtain employment. (See *In re Marriage of Bardzik* (2008) 165 Cal.App.4th 1291, 1304, 1308; *In re Marriage of Eggers* (2005) 131 Cal.App.4th 695, 701.) Instead, Father's primary focus was Mother's current and past income and employment. Moreover, the court discounted Father's testimony that he was unable to secure employment during his purported disability and his earning capacity was "zero dollars" unless he qualified again for unemployment compensation. By failing to produce credible evidence that he lacked the ability or opportunity to earn a comparable income, Father cannot fairly complain the family court wrongly imputed income to him. He

did not meet his burden, and Mother had no obligation to come forward with evidence regarding the availability of jobs at the $6,515 income level.  There was no abuse of discretion in this case.

## DISPOSITION

The July 27, 2021 order is affirmed.  Fang Huang is to bear his own costs on appeal.

NOT TO BE PUBLISHED.


LUI, P. J.

We concur:



CHAVEZ, J.



HOFFSTADT, J.


9